## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

BOBBY LLOYD NANCE,            )
                             )
     Plaintiff,   )
                             )
v.                           )  Case No. CIV-11-763-M
                             )
COTTON ELECTRIC COOPERATIVE, )
                             )
     Defendant.   )

## <u>ORDER</u>

This case is scheduled for trial on the Court's April 2012 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed January 31, 2012.  On

March 2, 2012, plaintiff filed his response, and on March 7, 2012, defendant filed its reply.  Based

upon the parties' submissions, the Court makes its determination.

I.  <u>Introduction</u>[1]

Defendant is a cooperative that provides electric service to over 21,000 meters in eight

counties of Southwest Oklahoma.  Since December 1, 2004, Warren Langford ("Langford") has been

the CEO for defendant.  Defendant's line operation is divided into two areas: Western Area and

Eastern Area.  The Western Area constitutes approximately two-thirds of defendant's line operation.

Langford estimates that 95% of defendant's construction activities originate in the Western Area.

Defendant's Operations Superintendent, Ed Kelley ("Kelley"), oversaw construction and

maintenance of both the Western Area and the Eastern Area.  According to plaintiff, at some point

in time, defendant added two to three more operations superintendents.  From approximately 2001

until July 15, 2010, the Western Area had two operations superintendents – one who oversaw line

_____

[1]The facts in this introduction are set forth in the light most favorable to plaintiff.

construction and one who oversaw line maintenance.  Currently, the Eastern Area has one operations superintendent.

Plaintiff began working for defendant in 1976.  Plaintiff alleges that he received favorable evaluations during his tenure with defendant and never had a blemish on his record.  Except for approximately 1 ½ to three years in the 1990s, plaintiff was assigned to the Maintenance division for his entire career with defendant.  Plaintiff alleges that his duties in Maintenance included duties and responsibilities of the Construction division.  On November 1, 2001, plaintiff became the Western Area Operations Superintendent over Line Maintenance.

Brian Jones ("Jones"), defendant's employee who is 13 years younger than plaintiff, spent his entire career with defendant.  In 1981, Jones was hired as an Apprentice Powerline Tech in Construction.  Jones received two promotions while remaining in the Construction division.  In 1995, Jones was promoted to Construction Foreman, and in 1998, he was moved to Construction Crew Chief.  On March 1, 2002, Jones became the Western Area Operations Superintendent over Line Construction.

Historically, linemen were trained and segregated to be either construction linemen or maintenance linemen.  However, over approximately the last five years, defendant has emphasized cross-training in its apprentice lineman program.  Graduates of the program were trained in both construction and maintenance work.  There is no longer a distinction in the training of new journeyman linemen; they are now proficient in both line construction and maintenance.

According to plaintiff, line maintenance is more technical than line construction.  Purportedly, line maintenance requires knowledge and skill of both maintenance and construction, whereas construction does not necessarily require the combination of both skills.  Plaintiff disputes

that one operations superintendent could easily do the work of both superintendents; plaintiff asserts that a superintendent would need a wide background of line operations in order to adequately supervise both Eastern and Western areas.

In 2010, plaintiff and Jones were operations superintendents in the Western Area.  Langford decided to reassign plaintiff and that Jones would remain as the Operations Superintendent; plaintiff was demoted to the position of Engineer Service Rep.  Langford asserts that he chose the person who possessed the broader range of construction skills.  When Langford advised plaintiff that he was being reassigned, Langford told plaintiff that defendant was "restructuring" and that it was "over-supervised."  Plaintiff alleges that Langford told him the decision had nothing to do with defendant saving money.

In late 2010, defendant's Vice President of Operations, Steve Lyons, retired.  Mike Ottinger, a person in his mid-30s who purportedly lacked experience for the position, filled the position of Vice President of Operations.  Defendant did not post the position.  Plaintiff alleges he would have applied had the position been posted.

Plaintiff testified that he believes defendant demoted two other employees, Kelley and Larry Max Phillips ("Phillips"), due to age.  Kelley's reassignment occurred between 1994 and 2000, when John Sheppard was defendant's CEO.  Langford played no role in Kelley's reassignment; however, Langford reassigned Phillips.

Plaintiff asserts that he was more qualified for the position than Jones because plaintiff has experience in both maintenance and construction, plaintiff has more education, and plaintiff received Employee of the Year while he was Superintendent of Line Maintenance.  Plaintiff now brings this

action for age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*

II.     Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts.  Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

Pursuant to the ADEA, it is unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The United States Supreme Court held:

4

> a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

*Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009).

When assessing the burden of proof in ADEA claims, the Tenth Circuit has consistently applied the *McDonnell Douglas*[2] burden-shifting analysis applicable to Title VII claims. *See, e.g., Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114-15 (10th Cir. 2007).[3] According to that analysis, plaintiff has the burden of establishing a prima facie case of employment discrimination based on his age; if he does so, the defendant must articulate a legitimate, non-discriminatory reason for its actions, and, if it does so, plaintiff then has the burden of proving that such reason was a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-04. Once a non-discriminatory reason has been advanced, to avoid summary judgment at this stage, plaintiff must offer evidence sufficient to create a genuine issue of material fact with regard to whether the articulated reason for the adverse employment decision is pretextual; unsupported conclusory allegations are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994).

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[3]In *Gross*, the Supreme Court did not discuss the effect of its holding on the *McDonnell Douglas* burden-shifting analysis in an ADEA case, but observed in a footnote that it "has not definitely decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context." 129 S. Ct. at 2349 n.2. However, since *Gross*, the Tenth Circuit has continued to apply the *McDonnell Douglas* analysis. *See Phillips v. The Pepsi Bottling Grp.*, 373 F. App'x. 896, 899 (10th Cir. 2010); *Reeder v. Wasatch Co. Sch. Dist.*, 359 F. App'x. 920, 923 (10th Cir. 2009).

A.    Prima Facie Case

Defendant contends that plaintiff fails to establish a prima facie case under the ADEA because plaintiff's replacement was also over the age of 40.  Plaintiff asserts that his replacement does not need to be under the age of 40 to constitute an ADEA claim.

> The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age.  Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old.  Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case.

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."  *Id.* at 313.

Thus, to establish a prima facie case for age discrimination, plaintiff must show that he was (1) within the protected age group – i.e. age 40 or older; (2) doing satisfactory work qualified for the position; (3) discharged or adversely affected by defendant's employment decision; and (4) replaced by a substantially younger person. *See Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995); *see also O'Connor*, 517 U.S. 308, 312-13.

In the case at bar, defendant only contends that plaintiff has not established the fourth element of a prima facie age discrimination claim; defendant concedes for purposes of summary judgment that plaintiff satisfies the first three elements.  Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all

reasonable inferences in plaintiff's favor, the Court finds that there is a genuine issue of material fact as to whether plaintiff was replaced by a substantially younger person. Specifically, a rational jury could find that plaintiff was replaced by a substantially younger person because Jones is 13 years younger than plaintiff.

Accordingly, the Court finds that, for purposes of summary judgment, plaintiff has established a prima facie case for age discrimination.

B.      Legitimate, Non-Discriminatory Reason

As stated above, once the plaintiff establishes a prima facie case for age discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802-03; *Simmons v. Skyes Enter., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Therefore, a defendant satisfies this burden by offering admissible evidence sufficient for the trier of fact to conclude defendant made the adverse employment decision for a legitimate, non-discriminatory reason. *See id.* at 142-43.

Here, the Court finds that defendant has provided legitimate, non-discriminatory reasons for consolidating the operations superintendent positions and for selecting Jones, rather than plaintiff, for the position. Defendant asserts that its legitimate, non-discriminatory reasons to consolidate the operations superintendent positions were that: it implemented cross training programs for construction and maintenance and one superintendent could handle the workload due to the cross-trained lineman and reduced amount of supervisory work. Further, defendant asserts that its legitimate, non-discriminatory reasons for selecting Jones was that: a person versed in only line

maintenance will not possess the necessary construction skills for the position; approximately 95% of defendant's construction activities originate in the Western Area; and Jones has significantly more line construction experience than plaintiff.

Accordingly, the Court finds that defendant has satisfied its burden to produce a legitimate, non-discriminatory reason for consolidating the operations superintendent positions and for selecting Jones for the position.

C.    Pretext

Pretext "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (citing *Reynolds v. School Dist. No. 1 Denver*, 69 F.3d 1523, 1535 (10th Cir. 1995)).  The "relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).  To that end, the Tenth Circuit has stated that:

> [a] plaintiff produces sufficient evidence of pretext when [he or] she shows such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. When evaluating the sufficiency [of] this evidence, we look to several factors, including the strength of the employee's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for summary judgment.

*Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1281 (10th Cir. 2010) (internal citations and quotations omitted).

8

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff has submitted sufficient evidence to create a genuine issue as to whether defendant's proffered reasons were pretextual.  Based upon admissible evidence regarding Phillip's reassignment and the substantially younger employee who replaced him, a rational jury could infer that age is the motivating factor in defendant's decisions to reassign its employees.  Furthermore, a rational jury could find that plaintiff's prima facie case is strong as: (1) plaintiff is over the age of 40; (2) both parties agree that plaintiff was qualified for the position; (3) defendant did not retain plaintiff for the superintendent position; and (4) as discussed in Part III.A, plaintiff was replaced by a substantially younger employee.  Thus, plaintiff has produced sufficient evidence that shows weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the defendant's proffered legitimate reasons to reassign plaintiff and retain Jones as the Operations Superintendent.

Accordingly, the Court finds that plaintiff has submitted sufficient evidence for a rational jury to infer that defendant's proffered legitimate reasons were pretextual.

D.      Compensatory Damages

Defendant contends that plaintiff's compensatory damages are not recoverable under the ADEA.  The ADEA provides, in pertinent part:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of [the Fair Labor Standards Act]: *Provided*, That liquidated damages shall be payable only in cases of willful violations of this Act.  In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for

9

> amounts deemed to be unpaid minimum wages or unpaid overtime
> compensation under this section.

29 U.S.C. § 626(b) (emphasis in original).  However, "the ADEA does not permit separate recovery of compensatory damages for pain and suffering or emotional distress," *C.I.R. v. Schleier*, 515 U.S. 323, 326 (1995).

Here, plaintiff's request for compensatory damages does not explicitly seek recovery for pain and suffering or emotional distress.  Rather, plaintiff seeks "compensatory damages pursuant to ADEA 29 U.S.C. §§ 621 et seq.  In an amount to be determined by the jury at the time of trial." Plaintiff's Complaint [docket no. 1] at 5.

Accordingly, the Court finds that defendant is entitled to summary judgment only to the extent that plaintiff's request for compensatory damages seeks recovery for pain and suffering or emotional distress.

IV.   Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART defendant's Motion for Summary Judgment [docket no. 15].  Specifically, the Court finds that: (1) defendant is not entitled to summary judgment as to plaintiff's ADEA claim; and (2) plaintiff is denied compensatory damages to the extent that plaintiff seeks recovery for pain and suffering or emotional distress.

**IT IS SO ORDERED this 26th day of March, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

10